IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN WATSON, ANTOINETTE JAMES, HAZEL EDWARDS, GAIL DEAN HUGHES, on behalf of themselves and all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-06-1709 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, et. al., | § § § | |
| Defendants. | § | |

ORDER

Pending before the Court is Plaintiffs' Request for a Temporary Restraining Order (Instrument No. 4). Having considered the motion, submissions, the parties' arguments at a May 25, 2006 hearing, and the applicable law, the Court determines the motion should be denied.

BACKGROUND

This suit arises under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, ("Stafford Act"), 42 U.S.C. §§ 5121 *et. seq.*, which ultimately directs Defendant Federal Emergency Management Agency ("FEMA") to assist state and local governments in the rendering of emergency services and assistance

to areas affected by disaster.[1]  The twelve named plaintiffs seek to represent a class of individuals who were forced to evacuate the Gulf Coast region and relocate to cities across the country in August 2005 because of Hurricane Katrina.[2]

Plaintiffs allege four causes of action stemming from the transition of evacuees from FEMA's emergency housing assistance program pursuant to 42 U.S.C. § 5170b(a)(3)(B) ("Section 403") to its temporary housing assistance program under 42 U.S.C. § 5174 ("Section 408").[3]  Section 403 provides for emergency shelter immediately after a natural disaster and has no caps on duration

---

[1]  The Stafford Act, also known as the Disaster Relief Act of 1974, authorizes federal assistance after the President of the United States has declared a state to be a disaster area.  The Defendants in the instant action include FEMA, the United States Department of Homeland Security ("DHS"), which oversees FEMA, and individual FEMA and DHS employees: Michael Chertoff, Secretary of DHS; R. David Paulison, FEMA's interim director; Vice Admiral Harvey Johnson, FEMA's deputy director; and William E. Peterson, the FEMA regional director over Texas and Louisiana.  The Court will collectively refer the Defendants as "FEMA."

[2]  The Court notes that another suit on behalf of Hurricane Katrina victims is pending in the Eastern District of Louisiana.  In that case, the plaintiffs also seek class certification.  This Court has asked both parties to provide information as to the proposed class members and the causes of action asserted in the Louisiana suit so it can compare that suit to the instant action.

[3]  In response to Katrina, FEMA created a program under Section 403 in which it entered into agreements with state and local governments (collectively, "governmental entities") giving the governmental entities the authority to enter into lease agreements with landlords and/or to provide evacuees with housing vouchers for landlords.  The governmental entities then became parties or guarantors of evacuee leases and seek reimbursement from FEMA for those expenditures.

or the amount of monetary assistance an individual may receive, while Section 408 contains mandatory maximum caps of $26,200 total assistance and can last up to eighteen months.  *See* §§ 5170b(a)(3)(B), 5174(h)(1), (c)(1)(B)(ii).  Plaintiffs assert constitutional as well as statutory violations of the Stafford Act and accompanying federal regulations.   Specifically, Plaintiffs allege, *inter alia*, FEMA has been arbitrary and discriminatory in deciding which applicants may transition into Section 408 assistance and which applicants are no longer eligible to receive any type of financial assistance.[4]  Moreover, Plaintiffs allege that FEMA has unlawfully curbed utility payments in violation of the Stafford Act.

Defendants assert the defense of sovereign immunity, arguing all of the Stafford Act's provisions are discretionary, and thus, not subject to judicial review. Alternatively, they argue the Plaintiffs lack standing to challenge housing assistance decisions under Section 403 because the only assistance from FEMA was paid directly to the governmental entities.  In effect, the Defendants contend that because they provided no benefits directly to evacuees themselves, those evacuees lack standing to challenge its decisions.

---

[4]  At a May 25, 2006 hearing, Plaintiffs' counsel acknowledged FEMA had distributed "a lot" of money to the states affected by Katrina, but charged that the manner in which the distribution has occurred and is occurring is both inept and incompetent.

3

FEMA set a May 31, 2006 deadline for the termination of its Section 403 program. Several governmental entities, however, requested an extension of the program for its residents that FEMA had deemed ineligible for Section 408 funding. To date, eleven jurisdictions in Texas, including Houston, have requested and been granted extensions for those individuals who have been deemed ineligible for Section 408 funding. Accordingly, in those jurisdictions, evacuees deemed ineligible for 408 funding will not have their Section 403 funding terminated until June 30, 2006. According to FEMA, evacuees who have applied for Section 408 funding but whose applications are still pending will continue to receive 403 assistance until eligibility has been determined. The Section 403 extension does not apply for individuals deemed eligible to receive Section 408 assistance; rather, those transitions will continue to occur despite the deadline extension.

Plaintiffs seek a temporary restraining order immediately compelling FEMA to: (1) suspend the transition from Section 403 to Section 408 until at least June 30, 2006 pending this Court's further review of FEMA's practices and procedures; (2) pay up to the fair market rent for housing and pay the separate metered utilities for those individuals previously determined eligible for Section 408 assistance; (3) inform the governmental entities that they may immediately notify all landlords and/or housing recipients that the current Section 403 funding will continue until

4

further court order and that households who have already transferred to 408 assistance may obtain funds up to the fair market rent cap to pay their utilities, including those separately metered, until further court order; and (4) notify those class members who have previously transferred to 408 assistance that they may obtain funds under the program up to the fair market rent cap to pay their utilities until further court order.[5]

## JURISDICTION

FEMA argues the Court lacks jurisdiction to consider this dispute.  As the party seeking to invoke federal court jurisdiction, Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction.  *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  Generally, the United States is immune from suit except to the extent it consents to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Thus, the Court lacks jurisdiction unless the Plaintiffs can demonstrate the United States waived its immunity.

Plaintiffs rely on the Stafford Act and the Administrative Procedure Act

---

[5] This requested relief is slightly different than what Plaintiffs initially sought in their original and amended complaints, however, Plaintiffs' counsel indicated at a May 26, 2006, hearing that they had slightly changed the relief they seek subsequent to discussions with FEMA officials.  Plaintiffs appear only to seek declaratory and injunctive relief.

("APA") to establish the Court's federal question jurisdiction.[6] *See* 5 U.S.C. §§ 706 (1), (2)(A) (2000).  Conversely, FEMA contends the Stafford Act shields it from suit.  More specifically, FEMA argues–and the Plaintiffs agree–that the decision to implement a federal disaster relief program is within the discretion of the President of the United States.   Indeed, § 5170 provides that the President *may* declare that a major disaster or emergency exists.  § 5170 (emphasis added).  Additionally, the portion of the Stafford Act authorizing Section 403 housing assistance states "federal agencies *may* on the direction of the President, provide assistance essential to meeting immediate threats to life and property resulting from a major disaster . . . ."  § 5170b (emphasis added).  Furthermore, FEMA is not obligated to provide its Section 408 temporary housing program.  *See* § 5174(a)(1) (stating the President may provide financial assistance in the aftermath of a disaster).  Most importantly for FEMA, § 5148 of the Stafford Act provides the federal government "shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty."  § 5148.  Stated another way, FEMA is entitled to sovereign immunity under the Stafford Act only if its actions were

---

[6] The APA expressly provides for judicial review of agency actions unless the underlying statute at issue precludes such review or the agency action is committed to agency discretion by law.  *See* 5 U.S.C. §§ 701, 702.

"based upon the exercise or performance of . . . a discretionary function or duty."
*Dureiko v. United States*, 209 F.3d 1345, 1351 (Fed. Cir. 2000) (quoting § 5148);
*Diversified Carting, Inc. v. City of New York*, 423 F. Supp. 2d 85 (S.D. N.Y. 2005).
Thus, the Court must determine whether FEMA's actions are discretionary or
mandatory.

The United States Court of Appeals for the Federal Circuit has developed a two-
part test to determine whether FEMA's activities are discretionary. *Dureiko*, 209 F.3d
at 1351. First, courts should decide whether the act involves judgment or choice. *Id*.
Under this prong, "an act does not involve an element of judgment or choice if it is
mandatory." *Id*. For example, if a federal statute, regulation or policy specifically
prescribes a course of action, then the act does not involve judgment or choice, and
sovereign immunity does not apply. *Id*. (quoting *Berkovitz v. United States*, 486 U.S.
531, 536 (1988)); *see also Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997,
1006 (9th Cir. 1998). If, however, FEMA's actions under the first prong involved
judgment or choice, courts move to the second prong. *Dureiko*, 209 F.3d at 1351.
Because the discretionary function exception is designed to curb "judicial second
guessing . . . [it] protects only governmental actions and decisions based on
considerations of public policy." *Id*. (finding no sovereign immunity where the court
deemed that a contractual agreement had been formed after a presidential guarantee to

7

pay disaster cleanup costs); *see also Rosas v. Brock*, 862 F.2d 1004, 1009 (11th Cir. 1987).

Here, Plaintiffs contend that the discretionary function exception does not apply because FEMA systematically failed to adhere to multiple mandatory directives. They argue that while the decision to enact a disaster assistance program is discretionary, once FEMA implements such a program, it is bound by any mandatory provisions of the statute and accompanying regulations. For example, § 5151 mandates that "the distribution of supplies, the processing of applications, and other relief and assistance activities *shall* be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status." § 5151(a) (emphasis added); *see also* 44 C.F.R. § 206.11 (mandating that all people who provide disaster assistance "shall perform their work in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status"). The mandatory wording of § 5151 is not an anomaly; other provisions of the Stafford Act contain language that is mandatory, rather than discretionary. *See, e.g.*, § 5170b(b) (specifying that the "[f]ederal share of assistance under this section shall not be less than 75 percent of the eligible cost of such assistance").

The Court agrees many of the acts complained of fall within FEMA duties that

are mandated by the Stafford Act and its accompanying regulations.  While the initial

decision to provide Katrina victims with disaster relief funds was discretionary, the

Court rejects FEMA's argument that the agency has unreviewable discretion in all

subsequent disaster relief efforts.  Accordingly, the Court concludes it has subject

matter jurisdiction to hear the dispute.  *See McWaters v. Fed. Emergency Mgmt.*

*Agency*, 408 F. Supp. 2d 221, 235 (E.D. La. 2005) (reasoning that "[a]n act by

FEMA and its employees and contractors in direct violation of the Statute and the

Regulations promulgated thereby clearly comes under the purview of . . . the

A.P.A."); *see generally Graham*, 149 F.3d at 1005-1007; *cf. Lawson v. Fed.*

*Emergency Mgmt. Agency*, No. 03 Civ. 0881(NRB), 2003 WL 2006600, at *2 (S.D.

N.Y. April 30, 2003) (finding no jurisdiction under the Stafford Act or APA where

plaintiff sued after FEMA denied him rental assistance upon finding that his loss of

employment was not the result of the September 11, 2001, World Trade Center

attacks).

Additionally, Plaintiffs advance claims that FEMA violated their right to due

process under the Fifth Amendment of the Constitution.  Section 5148 does not

deprive federal court jurisdiction of constitutional claims.  *See Rosas v. Brock*, 826

F.2d 1004, 1008 (11th Cir. 1987); *see also Benzman v. Whitman*, No. 04 Civ. 1888

(DAB), 2006 WL 250527, at *25 (S.D. N.Y. Feb. 2, 2006); *United Powers Ass'n*

*v. Fed. Emergency Mgmt. Agency*, No. A2-99-180, 2001 WL 1789404, at *2 (D.N.D. Aug. 14, 2001) (finding that the Stafford Act does not preclude court review of constitutional claims).  "[T]he Supreme Court has recognized that a colorable constitutional claim will not be denied by a statutory provision which precludes judicial review but which does not specifically preclude judicial review of constitutional claims." *Benzman*, 2006 WL 250527, at *25 (citing *Webster v. Doe*, 486 U.S. 592, 603 (1988)).  The Court notes § 5148 does not expressly preclude courts from review of constitutional claims.  In the case at bar, Plaintiffs allege FEMA violated their constitutional rights to due process by failing to provide ascertainable eligibility standards governing Plaintiffs' interest in housing assistance, effectively depriving them of their entitlement to assistance, and by failing to properly notify them of the type and amount of any assistance for which they qualify.  Because these allegations are not "wholly insubstantial and frivolous," the Court concludes it has jurisdiction under the APA to consider Plaintiffs' due process claims.  *Lockett v. Fed. Emergency Mgmt. Agency*, 836 F. Supp. 847, 854-55 (S.D. Fla. 1993);  *see also Benzman*, 2006 WL 250527, at *25.  Accordingly, the Court determines it has subject matter jurisdiction to consider the Plaintiffs' claims.

## LAW AND ANALYSIS

FEMA argues the Plaintiffs have not demonstrated any of the four

prerequisites necessary for a temporary restraining order.   A plaintiff seeking injunctive relief must demonstrate: (1) there is a substantial likelihood that he or she will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting a preliminary injunction will not disserve the public interest.   *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974)); *see also Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985).   Moreover, such preliminary relief is "an extraordinary remedy" to be granted only if "the movant has clearly carried the burden of persuasion" on all four elements.   *Mississippi Power*, 760 F.2d at 621; *see also Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990).   Stated another way, the granting of a temporary restraining order should "be treated as an exception rather than the rule."   *Mississippi Power*, 760 F.2d at 621.

*Substantial likelihood of success on the merits*

With respect to the first element of a temporary restraining order, FEMA argues Plaintiffs have not demonstrated a substantial likelihood of success on the merits at this stage of the case because they cannot show on the pleadings and

written submissions that FEMA acted unlawfully in shifting evacuees from Section 403 to 408.[7]   In the Plaintiffs' first count of their four-count amended complaint, they contend FEMA has failed to transition the class members' housing in an equitable, non-arbitrary and non-discriminatory manner.   As discussed above, § 5151(a) of the Stafford Act provides that relief and assistance activities "shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age or economic status." § 5151(a).   Plaintiffs argue that FEMA's transition of the class from Section 403 to Section 408 has resulted in discrimination on the basis of economic status.[8]   In reviewing their written submissions, however, the Court preliminarily determines Plaintiffs have failed to meet their evidentiary burden at this time.   Consequently, the Court concludes the plaintiffs have not demonstrated a substantial likelihood of

---

[7]  FEMA also has challenged the Plaintiffs' standing.  Because the Court limits its analysis to jurisdiction and to whether a temporary restraining is warranted, it declines to discuss the standing issue at this time.  It notes, however,  that FEMA conceded during the May 25, 2006, hearing that individual evacuee plaintiffs would have standing to sue FEMA under the APA regarding decisions on their eligibility for Section 408 assistance.

[8]  Plaintiffs also refer the Court to § 5121, which states that Congress's intent in enacting the Stafford Act was "to provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage. . . ." § 5121.  The Court notes, however, this section is more of a preamble to the Stafford Act than a section conferring any mandatory duties upon FEMA.

12

success as to their first cause of action.

The Plaintiffs' second count charges that despite being legally obligated to do so, FEMA has failed to pay fair market rent when dispensing Section 408 assistance. They allege that FEMA has adjusted the fair market rents in New Orleans, Louisiana and Baton Rouge, Louisiana–two cities with housing markets drastically affected by Katrina–to reflect post-hurricane markets, but FEMA has not made similar adjustments in other locales altered by the hurricane, such as Houston.  In doing so, Plaintiffs allege FEMA has acted arbitrarily and discriminated against evacuees living outside of New Orleans and Baton Rouge.  However, there is no evidence that this allegedly discriminatory practice is based on any of the characteristics prohibited by § 5151.  Moreover, according to FEMA's regulations, the fair market rental values are determined by the Department of Housing and Urban Development ("HUD").  *See* 44 C.F.R. 206.117(b)(B).  It appears that based on the information before the Court, so long as FEMA is providing Section 408 assistance in accordance with amounts specified by HUD, it is in compliance with its mandates.  Accordingly, the Court preliminarily finds insufficient evidence at this time to show a substantial likelihood of success as to these allegations.

Plaintiffs next allege that FEMA has violated § 5174 of the Stafford Act and the APA by failing to allow recipients of Section 408 assistance to pay for utilities

13

with that money.[9]  Section 5174 states the amount of temporary housing assistance

provided by FEMA "shall be based on the fair market rent for the accommodation

provided plus any cost of any transportation, utility hookups, or unit installation."

§ 5174(c)(1)(A)(ii); *see also* 44 C.F.R. § 206.117(b)(C) (providing that occupants

of temporary housing are responsible for paying all utility costs and security deposits

"except where the utility does not meter utility services separately and utility

services are not part of the rental charge").  Plaintiffs ostensibly argue that because

HUD's fair market rental rates are supposed to include the costs of both rent and

utilities, FEMA should be ordered to pay the fair market rental rates *plus* the cost

of utilities.  However, the statute and enabling regulation indicate that the HUD

rates should account for both, not that FEMA is required to pay for utilities in

addition to the fair market rental rate.  Moreover, the Plaintiffs' argue FEMA is

violating § 5151 because those evacuees who are fortunate to have rented apartments

in which the rental rate includes the cost of utilities are being treated differently than

those evacuees whose landlords meter utilities separately.  Again, § 5151 does not

prohibit all different treatment; it merely forbids different treatment based on race,

color, religion, nationality, sex, age, or economic status.  Currently, there is

---

[9] Section 403 assistance covers both rent and utilities.

insufficient evidence before the Court to demonstrate that FEMA's decision regarding separately metered utilities is based on one of the prohibited grounds. Consequently, the Plaintiffs cannot demonstrate a substantial likelihood of success on the merits at this time.

In their final count, Plaintiffs contend FEMA is in violation of the APA, Stafford Act, and the Fifth Amendment by failing to provide ascertainable standards governing their interest in temporary housing assistance.[10]  Plaintiffs fail to provide evidence that would allow the Court to find a substantial likelihood of success on the merits with respect to this claim at this time.

Though the Court empathizes with evacuees' frustrations stemming from FEMA's apparently confusing notification and transition system, the Court concludes the Plaintiffs have not, at this stage of the proceeding, presented sufficient evidence to establish the first prerequisite of a temporary restraining order.  Thus, the Court must deny Plaintiffs' request for a temporary restraining order.

Additionally, the Court has concerns with the Plaintiffs' request that it order the Section 403 program continue due to the fact that the program is currently being

---

[10]  The Plaintiffs allege that FEMA induced them to enter into apartment leases for between twelve and eighteen months in duration.  FEMA's subsequent early termination of Section 403 assistance, they argue, deprives them of property rights without due process of law.

15

administered by the governmental entities.  The Court will not at this time enter an order that, in effect, will require state and local government action.  However, the Court will order that FEMA shall expedite the review of any governmental entity's request to extend Section 403 relief for those evacuees in their jurisdiction deemed ineligible for Section 408 assistance until June 30, 2006.[11]

CONCLUSION

Based on the foregoing, the Court hereby

ORDERS that Plaintiffs' request for a temporary restraining order (Instrument No. 5) is DENIED at this time.  The Court further

ORDERS that FEMA shall expedite the review of any governmental entity's request for an extension through June 30, 2006, of Section 403 assistance to those evacuees deemed ineligible for Section 408 assistance.  The Court additionally

ORDERS that pursuant to the parties' agreement, the Court will conduct an evidentiary hearing on Plaintiffs' request for a preliminary injunction on Tuesday, June 20, 2006.  Additionally, the Court grants the parties' proposed discovery schedule.

ORDERS all further relief requested is DENIED at this time.

---

[11]  The Court notes that according to FEMA, all of the jurisdictions that have sought extensions have been granted their requests.  Moreover, at the May 26, 2006 hearing, FEMA agreed to an expedited review request made by any governmental entity.

SIGNED at Houston, Texas, on this 30th day of May, 2006.


_David Hittner_

DAVID HITTNER

United States District Judge