IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN WATSON, ANTOINETTE JAMES, HAZEL EDWARDS, NICOLE ALSTON, GAIL DEAN HUGHES, KIM EDWARD MITCHELL, SUZETTE HALL, ELLIS HERD, JOYCE MIXON, WINIFRED WILLIAMS, CHERYL JOHNSON, and GERALDINE JOHNSON, on behalf of themselves and all others similarly situated, | § § § § § § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. H-06-1709 |
| v. | § § | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, MICHAEL CHERTOFF, DEPARTMENT OF HOMELAND SECURITY, HARVEY JOHNSON, R. DAVID PAULISON, and WILLIAM PETERSON, | § § § § § § § § | |
| Defendants. | | |

ORDER ON REQUEST FOR PRELIMINARY INJUNCTION

Pending before the Court is Plaintiffs' Request for a Preliminary Injunction (Instrument No. 1). Having considered the motion, submissions, the parties' arguments at a June 20, 2006 hearing, and the applicable law, the Court determines the motion should be granted.

BACKGROUND

This suit arises under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, ("Stafford Act"), 42 U.S.C. §§ 5121 *et seq.*, which ultimately directs Defendant Federal Emergency Management Agency ("FEMA") to assist in the rendering of emergency services and assistance to areas affected by disaster.[1] The twelve named Plaintiffs seek to represent a class of individuals forced to evacuate the Gulf Coast region and relocate to cities across the country in August 2005 because of Hurricane Katrina.

Initially, FEMA provided eligible evacuees with rental assistance under its Emergency Housing Assistance program pursuant to 42 U.S.C. § 5170(a)(3)(B) ("Emergency Housing Assistance").[2] For the past several months, FEMA has worked to transition eligible evacuees into its Temporary Housing Assistance program pursuant

---

[1] The Stafford Act, also known as the Disaster Relief Act of 1974, authorizes federal assistance after the President of the United States has declared an area to be a disaster area.

[2] In response to Katrina, FEMA created an Emergency Housing Assistance program in which it entered into agreements with state and local governments (collectively, "governmental entities") giving the governmental entities the authority to enter into lease agreements for evacuees with landlords or to provide evacuees with vouchers for housing. The governmental entities then became parties or guarantors of evacuee leases and seek reimbursement from FEMA for those expenditures.

to 42 U.S.C. § 5174(c) ("Temporary Housing Assistance").[3]  Temporary Housing Assistance provides less generous benefits, capping assistance at $26,200 for a maximum 18 months.[4]  Currently, FEMA reimburses Temporary Housing Assistance recipients for the cost of their monthly rent.

Although Plaintiffs allege several causes of action in their complaint, they seek preliminary injunctive relief on one narrow issue.[5]  The gravamen of their request for injunctive relief involves whether evacuees receiving Temporary Housing Assistance can use any portion of that rental assistance to pay for utility costs when their utilities are separately metered.  Specifically, Plaintiffs assert FEMA is obligated to pay Temporary Housing Assistance recipients an amount equal to the fair market rental rate

---

[3]  FEMA's Emergency Housing Assistance is also known as "Section 403" assistance, and its Temporary Housing Assistance is commonly referred to as "Section 408" assistance.

[4]  At the injunction hearing, counsel for FEMA noted that until Hurricane Katrina, disaster victims only received assistance through the agency's Emergency Housing Assistance program for a maximum of a few days or weeks and then would move into the Temporary Housing Assistance program if deemed eligible.  Initially, more than 60,000 households were eligible for the Emergency Housing Assistance program.  As of the June 20, 2006 hearing, some 20,000 households remained in that program; FEMA had either transitioned the remainder into its Temporary Housing Assistance program or deemed those households ineligible for continued assistance.

[5]  Plaintiffs narrowed their requested injunctive relief following a decision in the Eastern District of Louisiana involving another suit on behalf of Hurricane Katrina victims.  *See McWaters v. Fed. Emergency Mgmt. Agency*, No. 05-5488 (E.D. La. June 16, 2006).

for the cities in which they live based on figures determined by the United States Department of Housing and Urban Development ("HUD").  In the event HUD's fair market rates are greater than an evacuee's actual rental amount, Plaintiffs argue they should be permitted to use the difference to pay at least a portion of their utility bills.[6] Plaintiffs contend that by not reimbursing them for the entire amount of the fair market rental rate, FEMA is in violation of both the Stafford Act and the statute's accompanying federal regulations.  Accordingly, Plaintiffs ask the Court to enjoin FEMA from refusing to provide the maximum amount of HUD's fair market rent and from prohibiting Temporary Housing Assistance recipients from using any extra money to help pay their utility bills.

In response, FEMA argues Plaintiffs cannot meet their burden to establish the elements necessary for a preliminary injunction.  Specifically, FEMA contends Plaintiffs cannot demonstrate that the plain language of the Stafford Act mandates that

---

[6]  For example, if an individual's rent is $800 a month, and the HUD fair market rental rate for the city in which he or she resides is $1,000, Plaintiffs argue that individual should be able to use the difference, $200, to help pay for utilities.  In this example, if the individual's utilities cost $300 a month, he or she would have to pay for utilities that exceed the fair market rental rate, which would be $100.  By the same token, the Court assumes that in the event that utilities are only $100 a month, Plaintiffs would argue that the individual only receive $900 a month in FEMA assistance.  Currently, FEMA is only reimbursing for rent, so the individual would receive $800.  The Court notes that the parties agree FEMA is not obligated to pay an amount greater than HUD's fair market rate for monthly rent.  Stated differently, it is undisputed that Katrina evacuees are not entitled to receive reimbursement for their total rent and utility costs if that amount is greater than the monthly fair market rental rate for the area in which they now reside.

it pay the cost of separately-metered utilities for those individuals enrolled in the Temporary Housing Assistance program.[7]  Alternatively, FEMA argues that even if the Stafford Act itself is ambiguous, the Court should defer to FEMA's reasonable interpretation of both the statute and its accompanying regulations.  Finally, FEMA challenges the Plaintiffs' ability to establish that without an injunction, they will suffer irreparable harm and that equity warrants their request for preliminary relief.  Thus, FEMA asks the Court to deny Plaintiffs' request.

## JURISDICTION

FEMA challenges the Court's subject matter jurisdiction to hear this dispute. Accordingly, the Court incorporates by reference the jurisdictional analysis in its May 30, 2006, denial of Plaintiffs' request for a temporary restraining order and its preliminary conclusion that subject matter jurisdiction exists in this case.  In that Order, the Court determined that while the decision to implement a federal disaster relief program was discretionary, once it acts, FEMA must follow the mandatory provisions of the Stafford Act and accompanying regulations.  Because many of the acts complained of fell within those mandates, the Court found subject matter jurisdiction

---

[7]  FEMA pays the utility costs of those evacuees receiving Temporary Housing Assistance whose utilities are not metered separately but instead are included in the cost of the monthly rent.  *See* 44 C.F.R. § 206.117(b)(1)(i)(C).  The Court notes under the Emergency Housing Assistance program, FEMA pays for both rent and utilities.

to consider Plaintiffs' request for a temporary restraining order.  Moreover, the Court concluded it had subject matter jurisdiction over Plaintiffs' allegations that FEMA violated their constitutional rights to due process by failing to provide ascertainable eligibility standards for its housing assistance programs.  With respect to Plaintiffs' request for a preliminary injunction, the Court concludes–and Defendants appear to agree–it has jurisdiction under the Administrative Procedures Act ("APA") to review the narrow issue for which Plaintiffs seek preliminary relief.  *See* 5 U.S.C. § 701 *et seq*.; *Newsome v. E.E.O.C.*, 301 F.3d 227, 232 (5th Cir. 2002).

Section 706(2)(A) of the APA instructs a reviewing court to affirm the agency's final action unless the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  § 706(2)(A); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Accordingly, judicial review is narrow, ensuring only that the agency "considered the relevant factors in making the decision, its action bears a rational relationship to the statute's purpose, and there is substantial evidence in the record to support it."  *Public Citizen, Inc. v. United States E.P.A.*, 343 F.3d 449, 455 (5th Cir. 2003) (quoting *Texas Oil & Gas Ass'n v. E.P.A.*, 161 F.3d 923, 934 (5th Cir. 1998)).  Moreover, the Court must not substitute its own judgment for that of the agency.  *Id*.  Therefore, the Court will review the term "fair market rent" as it is used in the Stafford Act to determine whether FEMA's actions in denying

6

reimbursement for utilities up to HUD's fair market rent under its Temporary Housing

Assistance program were arbitrary, capricious or an abuse of discretion.

## LAW AND ANALYSIS

FEMA argues Plaintiffs have not demonstrated they meet the four

prerequisites necessary to obtain a preliminary injunction.   The purpose of a

preliminary injunction is to preserve the status quo, prevent irreparable injury to the

parties, and "preserve the court's ability to render a meaningful decision" after a trial

on the merits.[8]  *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975); *see

also Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).  Thus, a

court may grant a preliminary injunction even though the outcome of the lawsuit itself

is uncertain.  *See, e.g., Meis*, 511 F.2d at 656; *see also Ponce v. Socorro Indep. Sch.

Dist.*, No. EP-06-CA-00039-KC, 2006 WL 1280932, at *20 (W.D. Tex. May 2, 2006).

To warrant a preliminary injunction, Plaintiffs must demonstrate that: (1) there

---

[8] FEMA argues that Plaintiffs must surpass an even higher hurdle for an injunction to issue because they seek a mandatory injunction, which would change–rather than preserve–the status quo.  While the Plaintiffs' desired relief arguably seeks to preserve the status quo of utility coverage, the Court discerns that an injunction that "goes beyond the status quo is even more disfavored and 'should not be granted unless the facts and law clearly favor the moving party.'" *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).  Thus, Plaintiffs must show a "clear entitlement" to the injunction. *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990); *see also Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).

is a substantial likelihood they will succeed on the merits; (2) a preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury to them outweighs the harm a preliminary injunction would cause FEMA; and (4) granting a preliminary injunction will not disserve the public interest.[9] *See Planned Parenthood of Houston and Southeast Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005); *Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 917-18 (5th Cir. 2000); *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).  The Court recognizes that "a preliminary injunction is 'an extraordinary remedy' and should only be granted if the party seeking the injunction has 'clearly carried the burden of persuasion' on all four requirements." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363-364 (5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).  The Court will address each element in turn.

A.  Substantial Likelihood Plaintiffs Will Succeed on the Merits

---

[9]  The decision over whether to grant or deny a preliminary injunction is within the discretion of the district court and may be reversed on appeal only for an abuse of discretion. *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).  Additionally, a preliminary injunction must be supported by specific findings of the court. *W. Alabama Quality of Life Coalition v. United States Fed. Highway Admin.*, 302 F. Supp. 2d 672, 678 (S.D. Tex. 2004).

With respect to the first element of a temporary restraining order, Plaintiffs must show a substantial likelihood they will succeed on the merits of their claims once the case proceeds to a full and complete trial. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). "A party seeking a preliminary injunction does not have to prove its claims at this stage of the proceedings, only that it is likely to succeed on the merits." *Puerto Rico Conservation Found. v. Larson*, 797 F. Supp. 1066, 1070 (D. P. R. 1992). FEMA argues Plaintiffs have not made the necessary showing because the Stafford Act excludes the cost of separately-metered utilities, or, alternatively, because FEMA's interpretation that those utilities are excluded is reasonable and entitled to deference. In contrast, Plaintiffs argue the statutory language mandates they be paid up to HUD's fair market rent for the cities in which they live, which includes a reasonable amount for utilities, and therefore, the Court should require FEMA to comply with the statute. Moreover, Plaintiffs argue even if the Court deems the statute's language ambiguous, FEMA's interpretation of the Stafford Act is inconsistent with the statute and its accompanying regulations. Accordingly, Plaintiffs argue FEMA's interpretation is unreasonable and should be afforded no deference.

Generally, the "starting point for interpretation of a statute 'is the language of the statute itself.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827,

835 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108)(1980)).   Courts employ a two-part test when reviewing an agency's construction of a statute for which it is tasked to administer.   *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).   If a court concludes the congressional intent is clear, the Court and the agency "must give effect to the unambiguously expressed intent of Congress."   *Id*. at 842-43 (noting that courts are the final authority on issues of statutory construction).   In the event a court determines Congress has not addressed the issue before it, the court next analyzes "whether the agency's answer is based on a permissible construction of the statute."   *Id*. at 843.[10]   Therefore, so long as an agency's interpretation of a statute is reasonable, that interpretation or application should not be disturbed.   *Id*. at 844-45; *see also Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999); *Martinez-Moya v. Immigration & Naturalization Serv.*, 904 F.2d 1018, 1021 (5th Cir. 1990).

In the case at bar, Plaintiffs challenge FEMA's interpretation of 42 U.S.C. § 5174(c)(1), which authorizes its Temporary Housing Assistance program.   Section 5174(c)(1)(A)(ii) provides that "[t]he amount of assistance . . . shall be based on the

---

[10]   In *Chevron*, the Court noted that administrative agencies enact rules to "fill any gaps left, implicitly or explicitly, by Congress."   *Id*. at 843 (citing *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).   Such regulations control unless a court deems them "arbitrary, capricious, or manifestly contrary to the statute."   *Id*. at 844.

*fair market rent* for the accommodation provided plus the cost of any transportation, utility hookups, or unit installation not provided directly by the President." § 5174(c)(1)(A)(ii) (emphasis added).  FEMA represents Congress has mandated, via § 5174's plain language, that FEMA only provide [Temporary Housing Assistance] recipients with assistance for the costs enumerated, namely transportation, utility hookups or unit installation, in addition to fair market rent. Additionally, FEMA argues that because the cost of separately-metered utilities is not encompassed in the definition of fair market rent, "Congress was obliged to include in that provision language authorizing the use of Temporary Housing Assistance funds to pay" the costs of the other three items.  Thus, FEMA argues Congress implicitly intended to exclude from Temporary Housing Assistance the costs of separately-metered utilities.

On the other hand, Plaintiffs argue Congress intended that FEMA follow the standard definition of fair market rent, and provide Temporary Housing Assistance recipients with assistance in the amount of HUD's fair market rental values.  They argue by using the term "fair market rent," a common term in the housing assistance context, Congress intended it to be synonymous with HUD's well-established definition.  Section 5174's companion federal regulation directs FEMA to base Temporary Housing Assistance amounts on HUD's fair market rents.  44 C.F.R.

11

§ 206.117(b)(1)(B).   Moreover, HUD regulations provide:

> Fair market rent means the rent, *including the cost of utilities* (except telephone), as established by HUD, pursuant to this subpart, for units of varying sizes (by number of bedrooms), that must be paid in the market area to rent privately owned, existing, decent, safe and sanitary rental housing of modest (non-luxury) nature with suitable amenities.

24 C.F.R. § 888.111(b) (emphasis added).   Additionally, Plaintiffs contend Congress did not include utility bills in its list of enumerated costs because it intended utilities to be encompassed by the term "fair market rent."

In response, FEMA argues that it has promulgated its own definition of "fair market rent" and that the HUD rates are merely a starting point in determining the amount of assistance to provide each recipient.   FEMA's regulations define fair market rent as: "housing market-wide estimates of rents that provide opportunities to rent standard quality housing throughout the geographic area in which rental housing units are in competition.   44 C.F.R. § 206.111.   However, the Court notes the definition continues, stating that "the fair market rent rates applied are those identified by the Department of Housing and Urban Development as being adequate for existing rental housing in a particular area."   *Id*.

The Court begins its analysis by pointing out what appears undisputed: per the express language in the statute, FEMA must pay Temporary Housing Assistance

12

recipients "fair market rent."[11]  Because "fair market rent" is not explicitly defined in the statute itself, the term's definition is at the heart of this dispute.  The Court notes at the outset there is no guiding precedent on this specific issue, and neither side referenced any portion of the statute's legislative history that offers significant insight into Congress's intent.

Thus, the Court must examine the language of a statute, looking to the particular language at issue and to the language and design of the statute as a whole. *See City of Dallas, Texas v. Fed. Commc'ns Comm'n*, 118 F.3d 393, 395 (5th Cir. 1997).  In doing so, "the court is duty bound to look at obvious sources that may reveal what meaning Congress intended to invoke when using such a phrase." *Id*. Therefore, courts may look to sources such as dictionary definitions or industry practice. *Id*.  Moreover, "[t]he Supreme Court has recognized that when a statute uses a technical term, we must assume that Congress intended it to have the meaning ascribed to it by the industry under regulation."  *Id*. (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991)).

Here, the Court agrees with Plaintiffs that Congress likely intended the term

---

[11]  Indeed, the statute orders that if FEMA provides Temporary Housing Assistance, the amount of assistance *shall* be based on the fair market rent.  *See generally Texas Office of Pub. Util. Counsel v. Fed. Commc'ns Comm'n*, 265 F.3d 313, 322 (5th Cir. 2001) (noting that generally, courts have "read 'shall' as a more direct statutory command than words such as 'should' or 'may'").

"fair market rent" to be consistent with the term as used over the past several decades in the context of housing assistance programs generally. *See, e.g., Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 422 n.4 (1987) (recognizing HUD has traditionally included a reasonable amount for utilities in its definition of rent); *see generally Aujero v. CDA Todco, Inc.*, 756 F.2d 1374, 1376 (9th Cir. 1985) (discussing HUD's early regulations relating to rent, which historically included utilities except for telephone). In other words, the Court determines that fair market rent, as used in § 5174, is a term of art. *See United States v. Cuomo*, 525 F.2d 1285, 1291 (5th Cir. 1976) (stating courts must "interpret particular words of a statute in their commonly understood sense, unless the statute obviously requires a different interpretation").

The term "fair market rent" as it is used § 5174 is appropriately categorized as a term of art in the realm of housing assistance, albeit under a federal agency primarily tasked with emergency management. *See id.* "In the absence of a contrary indication, we assume that when a statute uses such a term, Congress intended it to have its established meaning." *McDermott*, 498 U.S. at 342. Therefore, the Court concludes that Congress, in enacting § 5174, intended the term to have its established meaning, which takes into account a reasonable amount to cover utilities. *See id.*; *see also generally Sullivan v. Stroop*, 496 U.S. 478, 483

14

(1990) (observing that "where a phrase in a statute appears to have become a term

of art . . . any attempt to break down the term into its constituent words is not apt

to illuminate its meaning").  Finally, this statutory construction appears consistent

with the Stafford Act's purpose, which includes "achieving greater coordination and

responsiveness of disaster preparedness and relief programs."   42 U.S.C. §

5121(b)(3); *see also United States v. Lachman*, 387 F.3d 42, 51 (5th Cir. 2004) ("In

interpreting statutes we must adopt the definition most consistent with the statute's

purpose.").

The Court's construction of § 5174 is supported by FEMA's own regulations,

which mandate that FEMA base the rental assistance it provides on HUD's current

fair market rates for existing rental units in the recipient's geographic location.  44

C.F.R. §§ 206.111,  206.117(b)(1)(B).[12]  The Court concludes congressional intent

is clear and must be given effect.   *See Chevron, U.S.A., Inc.*, 467 U.S. at 842-43.

Thus, there is a substantial likelihood Plaintiffs will succeed on the merits of their

claim that FEMA acted arbitrarily and capriciously in its interpretation of § 5174

---

[12]  However, it appears that FEMA's regulation regarding utilities that are not
metered separately conflicts with both the Stafford Act and § 206.117(b)(1)(B).  *See* §
206.117(b)(1)(c) (specifying that utility costs and deposits "are the responsibility of the
occupant except where the utility does not meter utility services separately and utility
services are a part of the rental charge)."  This apparent inconsistency does not affect
the Court's determination that fair market rent under § 5174 takes into account a
reasonable amount for utilities.

with regard to this narrow utility issue.  Accordingly, Plaintiffs have demonstrated the first element necessary to obtain a preliminary injunction.

B.  Plaintiffs Will Suffer Irreparable Harm Without the Injunction

In addition to showing success on the merits of their claim, Plaintiffs must establish they will suffer irreparable harm if an injunction is not granted.  *DSC Commc'ns Corp.,* 81 F.3d at 600; *Cherokee Pump & Equip. Inc.*, 38 F.3d at 249.  To show a substantial threat of injury or harm, Plaintiffs must demonstrate some concrete injury or harm resulting from FEMA's actions.  *See Funds for Animals v. Clark*, 27 F. Supp. 2d 8, 14 (D.D.C. 1998); *George Washington Home Owners Ass'ns v. Widnall*, 863 F. Supp. 1423, 1427 (D. Colo. 1994).

Irreparable harm is considered to be a harm that cannot be redressed by either an equitable or legal remedy following trial.  *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994).  More specifically, "an injury is irreparable if it cannot be undone through monetary remedies."  *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984); *Deerfied Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).  Additionally, irreparable harm is neither speculative nor remote, but must be actual and imminent.  *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975).  This element is met if Plaintiffs demonstrate they are likely to suffer this type of harm before a trial on the

merits. *See Puerto Rico Conservation Found.*, 797 F. Supp. at 1071.

In the instant action, Plaintiffs represent their anticipated harm is both imminent and irreparable because many do not have the financial resources to pay their utility bills without FEMA's assistance. Indeed, Plaintiffs presented affidavits and testimony, which illustrate the compelling stories of several members of the prospective class.[13] FEMA responds that because Plaintiffs challenge the amount of rental assistance it provides, their claim is for monetary damages, which renders them unable to show irreparable harm. Moreover, FEMA argues that recently-enacted legislation offers some relief to the proposed class because evacuees who had been in the Emergency Housing Assistance program in Houston will continue to have their utilities paid.[14] The

---

[13] Some testimony regarded several proposed class members who no longer have utilities because they were unable to pay for them. As of the date of the hearing, at least one individual had been evicted because he could not pay his utility bills. Additionally, one Plaintiff represented that her son, who suffers from severe asthma, requires a mechanical breathing device that requires electricity. Her story is just one of many Plaintiffs proffer to illustrate the imminent and irreparable harm likely to occur without the injunction.

[14] The legislation states the FEMA may

provide funds to a State or local government or, as necessary, assume an existing agreement from such a unit of government, to pay for utility costs resulting from the provision of temporary housing units to evacuees from Hurricane Katrina and other hurricanes of the 2005 season if the State or local government has previously arranged to pay for such utilities on behalf of the evacuees for the term of any leases, not to exceed 12 months, contracted by or prior to February 7, 2006 . . . .

Emergency Supplemental Appropriations Act for Defense, the Global War on Terror and Hurricane Recovery, 2006, Pub. L. No. 109-234, 120 Stat. 418 (June 8, 2006).

Plaintiffs dispute FEMA's assertions about the new legislation, namely because the assistance is not automatic.  Rather, the legislation requires the governmental entities to administer the aid.  Thus, they argue, it only benefits a subset of plaintiffs, and more importantly, FEMA has not yet developed a plan for implementation of the legislation or guidelines that clarify who actually is eligible for the assistance.

On this factor, the Court concurs with Plaintiffs' argument that the threat of eviction on these facts constitutes imminent and irreparable injury.  *See, e.g., Mitchell v. United States Dep't of Hous. and Urban Dev.*, 569 F. Supp. 701, 704-05 (N.D. Cal. 1983).  The *Mitchell* court characterized the threatened harm to plaintiff–eviction and her likely inability to find affordable housing–to be of an irreparable nature, observing that

> [plaintiff and her children] would be homeless and subject to the many perils that homelessness brings.  Even if plaintiff could quickly locate new housing, it would likely be in another community.  Such a move would be disruptive to [plaintiff's] life, and particularly to the lives of her children, because of loss of friends and community contacts and a change in schools.

*Id.* at 705.  Likewise, the Court finds that Plaintiffs have presented sufficient evidence that FEMA's non-compliance with § 5174 adds to or enhances their likelihood of eviction and all of the problems associated with homelessness.  Thus, the Court concludes Plaintiffs have demonstrated they face imminent and irreparable harm.  *See*

*generally Sworob v. Harris*, 451 F. Supp. 96, 102 (E.D. Pa.) (finding irreparable injury an important factor in determining whether equitable relief is warranted when plaintiffs were in dire need of decent, low-income housing), *aff'd mem.*, 578 F.2d 1376 (3d Cir. 1978), *cert denied*, 439 U.S. 1089 (1979); *see also Estevez v. Cosmopolitan Assocs. LLC*, No. 05 CR 4318(JG), 2005 WL 3164146, at *3 (E.D. N.Y. Nov. 28, 2005) (acknowledging the actual and imminent harm that plaintiffs facing prospective eviction suffer); *see generally Higbee v. Starr*, 698 F.2d 945, 946, 947 (8th Cir. 1983) (affirming a denial of a preliminary injunction but recognizing that eviction constitutes irreparable injury).

With respect to the newly-enacted legislation, the Court agrees that any potential relief remains speculative. James Walke, who administers FEMA's Emergency Housing Assistance program and who testified in this matter, conceded that as of the preliminary injunction hearing, FEMA was still determining how to implement the appropriation for utilities. Moreover, the legislation is premised on the governmental entities' continued participation in the public assistance program. To date, many jurisdictions that initially administered FEMA's programs to Katrina victims have since opted out of helping provide hurricane-related housing assistance. Thus, the Plaintiffs who now reside in those jurisdictions are afforded no utility relief. However, the Court reserves the right to revisit this factor in the event FEMA finalizes plans for the

statute's implementation.  In the interim, the Court concludes Plaintiffs have sustained

their burden of establishing the second element necessary for a preliminary injunction.

### C.  Threatened Injury to Plaintiffs Outweighs any Harm to FEMA

In considering the third element required for a preliminary injunction, the Court

must engage in a balancing of the equities, weighing the impact such relief would have

on FEMA against the harm Plaintiffs will suffer if the injunction is denied.  *See DSC*

*Commc'ns Corp.*, 81 F.3d at 600; *Cherokee Pump & Equip. Inc.*, 38 F.3d at 249.

Plaintiffs represent FEMA's refusal to allow them to use any extra amount of assistance

for utilities hinders their chances of being able to remain in their current housing.  They

aver that most leases require tenants to maintain utilities, such as electricity, in their

residences.[15]  Moreover, they represent, FEMA's continued failure to follow the statute

and reimburse them for the HUD fair market rental rate puts them at a greater

likelihood of being evicted.  In essence, Plaintiffs ask that the Court order  FEMA to

follow the statute and pay the full fair market rental rate because it will help their

chances of avoiding eviction.

In response, FEMA argues that it will be harmed because an injunction would

---

[15]  Plaintiffs acknowledge that even with the full fair market rental rate, many in
the proposed class will struggle to pay the balance of their utility bills.  But, Plaintiffs
aver that any amount of assistance above what FEMA is currently providing will help
their chances of avoiding eviction.

mean that the Court is ordering it to violate its authorizing statute and accompanying regulations.  FEMA also avers a preliminary injunction would hinder its ability to react to major disasters and invade the province of its discretion regarding what programs to administer and assistance to provide disaster victims.

The Court recognizes the expense of providing Temporary Housing Assistance to thousands of households.  Moreover, the Court is cognizant that FEMA must have discretion in determining what assistance, if any, to provide to current and future victims of disaster and in administering federal relief.  However, the Court fails to see how a preliminary injunction over this narrow issue could harm FEMA's discretion.

First, as discussed previously, the agency has no discretion with respect to following a federal statute.  Under this Court's construction of the Stafford Act, FEMA must pay the fair market rate as determined by HUD for individuals in its Temporary Housing Assistance program.  Moreover, the agency retains its discretion to determine what programs to administer and who is eligible to receive that assistance both now and in the event of a future disaster.  Finally, FEMA's failure to follow this federal statute would cause great harm to Plaintiffs, namely by significantly increasing or speeding their chances of eviction.  *See generally McNeill v. New York City Housing Auth.*, 719 F. Supp. 233, 255 (S.D. N.Y. 1989) (finding the balance of the equities favored granting an injunction because plaintiffs faced "the threat of eviction and the prospect

21

of homelessness"). The Court concludes such harm outweighs any prospective harm that FEMA may suffer. *See Lancor v. Lebanon Hous. Auth.*, 760 F.2d 361, 363 (1st Cir. 1985) (finding appellant demonstrated a substantial likelihood of success on the merits and the necessary harm for an injunction to issue because of her imminent eviction from her home, which outweighed the minimal harm to appellant). Accordingly, Plaintiffs have met their burden to demonstrate that their threatened injury outweighs any potential harm to FEMA under a preliminary injunction.

### D.  A Preliminary Injunction Will Not Disserve the Public Interest

The final factor a court considers in its decision to grant or deny a preliminary injunction is whether an injunction is in the public interest. *DSC Commc'ns Corp.*, 81 F.3d at 600; *Cherokee Pump & Equip. Inc.*, 38 F.3d at 249. Thus, Plaintiffs must show it is in the public interest to enjoin Defendants from refusing to pay HUD's fair market rental rate and from prohibiting Plaintiffs from using any amount up to that fair market rate to help defray utility costs.  On one hand, Plaintiffs argue the public has a significant interest in helping thousands of families rendered homeless by Hurricane Katrina get back on their feet and ensuring that they remain housed in adequate shelter. On the other hand, FEMA argues the public has an interest in ensuring that it can adequately respond to future disasters.

The Court agrees that the public has an interest in FEMA's ability to provide

22

disaster relief in the future.  However, the public–in particular the communities in which Katrina victims now reside–has a significant interest in keeping those residents from becoming homeless once again.  Additionally, there is a significant public interest in ensuring a smooth transition from federal assistance to self sufficiency.  Finally, the public at large has an interest in the efficient use of federal funds.  More specifically, rewarding individuals, both now and in future disasters, who seek out less expensive rent in the hope that they would then have more money to put towards utilities encourages a more efficient use of federal and state resources.  Thus, the Court concludes the Plaintiffs have met their burden on the fourth and final element necessary for a preliminary injunction.

CONCLUSION

As discussed, the Plaintiffs have the burden of proof to establish all four prerequisites of a preliminary injunction.  After considering of all the necessary elements, the Court concludes the Plaintiffs have met this burden.  Accordingly, the Court hereby

ORDERS that Defendant FEMA, from the date of this Order, begin reimbursing any Temporary Housing Assistance recipient for the full amount of HUD's fair market rental value for the recipient's area of residence during the time that individual or family remains in the 408 program.  The Court further

ORDERS that FEMA may not terminate a Temporary Housing Assistance recipient solely on the basis that he or she used any extra portion of the fair market rent rate received to help pay the cost of utilities.  Thus, FEMA shall not prohibit Temporary Housing Assistance recipients from using any extra portion of that fair market rent for utilities.  The Court does not, however, order that any individual receive more than the fair market rental value for their city of residence.  Moreover, this Order does not impact FEMA's ultimate task of transitioning Temporary Housing Assistance recipients out of the temporary housing program in the event they have reached the statutory caps on assistance or FEMA determines they are no longer eligible to participate in the program.  The Court further

ORDERS that it reserves the right to revisit the terms of this injunction in the event FEMA adopts policies regarding the newly-enacted utility legislation that affect the terms of this injunction.  The Court further

ORDERS that FEMA notify Temporary Housing Assistance recipients that they may use the difference, if any, between HUD's fair market rent rate and their monthly rent to pay for at least a portion of their utilities.  Finally, the Court

ORDERS that, pursuant to Federal Rule of Civil Procedure 65(c) (which provides that no preliminary injunction shall issue unless the applicant has posted a bond in an amount deemed proper by the issuing court), Plaintiffs shall post a bond of

$500.

SIGNED at Houston, Texas, on this 13th day of July, 2006.


_____

DAVID HITTNER

United States District Judge